UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------x

AUDREY DEMETRES, individually : 
and on behalf of others similarly :
situated, :
                                    :     CIVIL ACTION NO. _____
        Plaintiff, :
                                      :
vs. :     **JURY TRIAL DEMANDED**
                                      :
ZILLOW, INC., :
                                      :
        Defendant :

---------------------------------------------x

## COMPLAINT

       Plaintiff, through counsel, alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

       1.    Zillow, Inc. ("defendant") operates the nation's dominant home buying platform at Zillow.com, which purports to make the process of buying and selling residential real estate less complicated and lower priced.

       2.    In the current digital economy, commercial and social activities are disproportionately dominated by only a few online platforms in specific, respective market sectors.

3.      Modern commerce and the modern marketplace are increasingly dominated by so called 'super platforms.'  There is, *e.g.*, Google for search, Amazon for retail, Instagram and Facebook for social networking, Yelp for reviews, Uber for transportation or the instant defendant, Zillow, for home buying.  Users look to platforms to serve as filters for overabundance of information that is available online, presorting and prioritizing it for consumers.

4.      Modern, digital commerce – both economic and social – is such that the impact of 'super platforms' is of increasing and critical concern, as it is conceivable that all of our human goods, services and even the most incidental of our mere interactions and communications will be made available through only a small number of internet platforms.

5.      For most consumers, residential home sales and purchases represent a matter of substantial investment, both financially and emotionally, that presents them with a decision far more consequential than those presented by the more mundane online purchase of household goods or entertainment products.

6.      Residential real estate – a home to live in – is often the single most expensive purchase American consumers ever make.  Correspondingly, it is often their main retirement asset.

7.      A prohibitive majority of homebuyers – 80% or more – use Zillow in the process of looking for a home.  This market dominance gives defendant the power to tilt the real-world playing field in favor of its own favored customers.  These are Premier Agents.

8.      A Premier Agent pays fees to defendant so they can be associated with properties which they do not have a listing relationship with.  Most consumer purchasers using the Zillow platform are unaware that they are being funneled to agents who paid a fee to Zillow to cause this to happen.

9.      Defendant relies on Premier Agents to collect revenue and is incentivized to re-direct inquiries made to listing agents and skew its design and interface cues to benefit Premier Agents.

10.     This operating practice allows defendant to deliver the sales leads it promises to Premier Agents each month so that they will continue paying fees to defendant, all to defendant's increasing financial gain.

11.     Defendant's business model, practices and tactics are unfair and deceptive toward traditional real estate brokers and listing agents; this deception further causes market confusion and economic harm to consumers.

12.     On defendant's platform, prospective homebuyers are deliberately re-routed in their attempts to reach the actual listing agents for properties they are

interested in, away from the agents with the most connection to the property; and toward agents that will benefit by further discouraging the prospective buyer from the property that caused them to be funneled to a Premier Agent in the first place.

13. The listing agent has the original connection with the seller and contracts to sell the house on the owner's behalf, which is why the agent will refer to an exclusively listed home as 'my listing.'

14. Defendant's designation of a real estate agent as a  Premier Agent – in return for a fee – suggests to the prospective buyer that there is a special relationship between the Premier Agent and the property.

15. By design, defendant promotes and implements a misleading advertising model as follows:  a prospective buyer is drawn to the defendant's website for its stated purpose of making it easier to find a home to buy, but it is not evident to the prospective buyer that defendant is more interested in connecting that consumer with a broker who has paid a fee to defendant.

16. A potential buyer viewing a property on the website is simultaneously presented with a button on the screen inviting them to 'Contact Agent.'

17. In the relevant, established market culture for residential real estate, the prospective buyer reflexively believes that the button to 'Contact Agent' will connect them to the listing agent – the agent with the closest tie to the property the consumer

4

is interested in.   Instead, clicking on the button also causes the consumer's information to go to three Premier Agents – agents who have merely paid a fee to Zillow.

18.      It requires a knowing and conscious effort on the part of the consumer who wishes to scroll through the information and discern the actual listing agent from the non-listing, Premier Agents.

19.      Defendant's control over Premier Agents is further indicated by their selection from real estate brokers based on number of homes sold and the right of termination based on performance.

20.      The dominance of the defendant's digital platform allows it to artificially confer upon a Premier Agent – in return for a fee – what the Premier Agents otherwise cannot do, which is to advertise to and solicit to prospective homebuyers through other agents' exclusive listings.

21.      This business model and structure operates to cast the Premier Agents as listing agents, when in actuality they are merely paying a fee to defendant and letting defendant portray them in a way that would be illegal and unethical for the Premier Agents to do directly.

22.      This business model presents a configuration wherein defendant and other market entities, duly licensed real estate agents and brokers, are working in

concert and combination to systematically divert prospective home buyers and sellers away from the very persons best situated to assist them. This scheme causes financial loss to plaintiff, and others similarly situated, and further restricts the marketplace to the detriment of all consumers and participants in the residential real estate market.

23. All of this is contrary to standard, traditional, ethical advertising practices where businesses have an arm's-length relationship with the platform where they buy advertising.

24. The effect of the defendant's concerted efforts with Premier Agents is to prevent and/or hinder prospective buyers from having access to the listing agents.

25. However, Premier Agents are unable to provide the information requested because, in actual fact, they do not have a connection to the property that on display, except that they have paid defendant a fee to appear as if they do.

26. This scheme causes the buyer to end up with an agent who – not being the listing agent – has a greater incentive to steer the buyer to a property other than the property that caused them to initiate the process in the first place.

27. Defendant does not make it known to potential buyers – *i.e.* defendant does not have to make a formal disclosure under the laws of the state of Connecticut and the regulations of the Department of Consumer protection – that defendant is

principally in the business of selling advertising to Premier Agents, who are incentivized to discourage the buyer from further pursuing the home they were initially interested in considering for purchase.

28.     In a standard home purchase/sale, the buyer and seller are represented by individual real estate agents who split a commission, i.e., 6%.

29.     However, a Buyer Broker Agreement allows an agent to collect a commission from both sides of the transaction, from the buyer and the seller.

30.     A Dual Agency transaction with the agent 'representing' the buyer and seller lets an agent keep the entire commission, but careful disclosures and consent are required.

31.     This opportunity to engage in 'buyer broker' and 'dual agency' is one of the main selling points to participating agents and brokers.

32.     Studies have shown that participating Premier Agents have more, and a higher percentage of, buyer broker and dual agency transactions compared to non-participating agents.

33.     It has been estimated within the industry that 60% of those real estate agents who advertised as a Premier Agent on Zillow received a 30% increase in these dual-side deals.

34.    This represents an 18% increase in dual agency among Premier Agents.

35.    The net effect of this business model on the prospective buyer is that he or she enters into a commercial setting – defendant's dominant, prevailing digital platform – where he or she is substantially more likely to participate in a dual agency dynamic without the careful disclosures normally required.

36.    This business model thereby allows to defendant's customers to consciously engage in advertising that, *de facto*, is otherwise in violation of disclosures and other compliance measures required by the laws of the state of Connecticut and the regulations of the Department of Consumer Protection.

37.    Plaintiff, persons similarly situated to plaintiff, and consumer purchasers and sellers of residential real estate have been harmed and damaged to their financial detriment and loss by the actions of the defendant, in that the defendant has:

      a.    engaged in deceptive and misleading advertising practices;

      b.    collected advertising fees from individual sales agents for the express purpose of assisting agents to appear as the listing agents for properties they have no connection to;

c.      caused the loss of sales commissions to plaintiff, and others similarly situated, as a result of using their information from duly organized Multi Listing Services ("MLS") in a way that devalues, misappropriates and co-opts the MLS to appear affiliated with defendant's Premier Agents;

d.      imposed and published price estimates on properties through the use of its own so called "Zestimate" – the defendant's data sorting algorithm which assigns a market value to the homes it displays next Premier Agent contacts. Through this practice, defendant insinuates individual home sellers into *de facto* listing agreements with agents the seller has never met, and effectively advertises properties at a price the seller never authorized;

e.      misled and deceived sales agents, home sellers and purchasers as to the market value of properties by corrupting actual appraisals of the properties through the publication of its Zestimates;

f.      caused plaintiff, and others similarly situated, to suffer the cancellation or non-renewal of exclusive listing agreements as a result of tortuously interfering with those contractual agreements through the publication of Zestimates.

g.      endeavored and/or conspired with MLS to publish and sell advertising around residential listings that amounts to facilitating the sale of real

estate without being duly licensed under the laws of the state of Connecticut and the regulations of the Department of Consumer Protection;

h.      misled and deceived purchasers and sellers of real estate to believe defendant provides an arm's length market resource designed to benefit them, when in fact defendant is collecting advertising fees in return for a service to these advertisers that is detrimental and antagonistic to the individuals' interests and the listing agreements the individuals have, in fact, entered into with agents who do not pay advertising fees to defendant;

i.      actively purchased, and continues to pursue the acquisition of, other digital platforms that offer vendor services to participants in the residential real estate market so that defendant will have access to confidential consumer information that is required to remain confidential under the real estate laws of the state of Connecticut and the regulations of the Department of Consumer protection;

j.      actively purchased, and continues to pursue the acquisition of, other digital platforms that offer vendor services to participants in the residential real estate market so that defendant will have access to confidential consumer information which plaintiff, and others similarly situated, are prohibited from accessing;

k.      attempted to monopolize – and in some circumstances does monopolize – the residential real estate market through the publication of its Zestimates and the *de facto* listing of properties with agents wholly unaffiliated with the properties;

l.      attempted to monopolize – and in some circumstances does monopolize – the residential real estate market through the publication of its Zestimates for each and every residence in existence in a given market, regardless of whether the property is for sale or not.

m.      attempted to monopolize – and in some circumstances does monopolize – the residential real estate market through the publication of its Zestimates, positioning itself to appear as an arm's length market-maker for each community's entire inventory of real estate, when in fact defendant has a fully vested financial interest that is contrary to public use and perception of the market it generates from its digital platform;

n.      attempted to monopolize – and in some circumstances does monopolize – the residential real estate market by actively pursuing and acquiring other digital platforms to promote the eventuality of requiring all residential real estate transactions to be processed in some manner through the use of defendant's market service;

o.    attempted to monopolize – and in some circumstances does monopolize – the residential real estate market through its burgeoning direct purchase program whereby defendant purchases title to properties for itself through a sales process that is inaccessible to plaintiff, and others similarly situated, which allows defendant to self-validate its own artificial Zestimates and unfairly control the market.

<u>Jurisdiction and Venue</u>

38.    Jurisdiction is proper pursuant to 28 USC § 1332 (d) (2) (Class Action Fairness Act of 2005 or "CAFA").

39.    Under CAFA, there is "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity." *Gold v. New York Life Ins.*, 730 F.3d 137, 141 (2d Cir. 2013). Reported record keeping for the state of Connecticut lists that there are approximately 20,000 licensed real estate agents and/or brokers in the state. Even a nominal award per each member of a class of this size would rapidly and easily exceed the aggregate, jurisdictional amount of $5 million. In addition, there are an as-yet undetermined number of individual consumer home purchasers and sellers who will add to the size of the class.

40.     Additionally, this Court has original subject matter jurisdiction over this matter for claims raising a federal question; 28 USC § 1331; and also pursuant to 28 USC § 1338, in that plaintiff's claims arise under the laws of the United States relating The Lanham Act and the Sherman Act. This Court has subject matter jurisdiction over the pendent state law CUTPA claim, as it is so related to the federal claims that it forms part of the same case or controversy under Article III of the United States Constitution.

41.     Plaintiff Audrey Demetres is a citizen of the State of Connecticut.

42.     Defendant Zillow, Inc., is a corporation duly organized in, and is a citizen of, the State of Washington.

43.     This Court has personal jurisdiction over defendant because it consciously and purposely conducts and transacts business within Connecticut.

44.     Venue is proper because plaintiff and the majority of class members reside in this District; plaintiff, all of the class members and the defendant conduct and transact business in this District.

45.     A substantial portion of events and omissions giving rise to the claims occurred in this District.

<u>Parties</u>

46.    Plaintiff Audrey Demetres is a citizen of Fairfield County, Connecticut and is a real estate salesperson and/or real estate broker.

47.    Plaintiff has been a listing agent for various properties on defendant's website and lost money due to Premier Agents who paid defendant to appear with the listings.

48.    Defendant is a duly organized corporation with its principal place of business in Seattle, Washington.

<u>Class Allegations</u>

49.    The class will consist of all real estate brokers, real estate sales agents and other similarly designated real estate personnel in Connecticut and, in some instances, individual consumer home sellers and purchasers.

50.    Common questions of law and fact predominate and include whether defendant's representations and practices were likely, and in fact did, harm plaintiff, the general public and plaintiffs and class members are entitled to damages.

51.    Plaintiff's claims and bases for relief are typical to other members because all were subjected to the same unfair and deceptive actions.

52.    Plaintiff is an adequate representative because her interests do not conflict with other members.

53. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

54. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

55. Plaintiff's counsel is competent and experienced in complex litigation and will fairly protect class members' interests.

56. Plaintiff seeks class-wide injunctive relief because the practices are constant, deliberate and ongoing.

**<u>FIRST COUNT</u> – Unfair Competition Under §§ 43(a), *et seq.*, of the Lanham Act, 15 USC § 1125(a)**

1.-56. Plaintiff hereby incorporates by reference paragraphs, 1 through 56, above, as paragraphs 1 through 56 of this the FIRST COUNT.

57. The advertising and market information published on the defendant's digital platform constitutes commercial speech which is disseminated throughout the residential real estate marketplace, all for the purpose of promoting the sales and use of defendant's goods, products and services.

58. The commercial advertising and speech disseminated by defendant is likely to mislead or confuse consumers, in violation of 15 USC § 1125 (a) (1), all to

the financial loss, harm and detriment of plaintiff, others similarly situated, and consumers.

59.     Plaintiff, and others similarly situated, are entitled to all remedies available under the Lanham Act, including but not limited to, injunctive relief, compensatory damages, treble damages, disgorgement of profits, costs and attorney fees.

**SECOND COUNT** – **Connecticut Unfair Trade Practices Act (CUTPA), 42 CGS §§ 110a, _et seq._**

1.-59. Plaintiff hereby incorporates by reference paragraphs, 1 through 59, above, as paragraphs 1 through 59 of this the SECOND COUNT.

60.     The violations of federal law alleged herein, _surpa_, constitute _per se_ violations of the Connecticut Unfair Trade Practices Act (CUTPA), 42 CGS § 110a, _et seq._

61.     The conduct complained of herein constitute unfair methods of competition and unfair and deceptive practices in the conduct of commerce, in violation of CGS § 42-110b (a).  Plaintiff, and others similarly situated, have suffered ascertainable losses as result of the conduct alleged.

62.     Under CUTPA, plaintiff, and others similarly situated, are entitled to injunctive relief, punitive damages, multiple damages and attorney fees and costs.

**<u>THIRD COUNT</u> – Antitrust Violations of Sherman Act, 15 USC §§ 1 and 2**

1.-62. Plaintiff hereby incorporates by reference paragraphs, 1 through 62, above, as paragraphs 1 through 62 of this the THIRD COUNT.

63.    The conduct complained of herein constitutes concerted action between the defendant, its Premier Agent customers and various MLS; the coordinated efforts of these entities caused an unreasonable restraint of trade in the residential real estate market; and plaintiff, and others similarly situated, suffered financial loss as a result of the competition-reducing effect of defendant's conduct.   The conduct complained of constitutes a violation of 15 USC § 1.

64.    The conduct complained of herein constitutes an attempt to monopolize the residential real estate market, in that defendant has engaged in predatory and anti-competitive conduct; defendant has the specific intent to monopolize this market; and there exists a dangerous probability that defendant will achieve monopoly power. Plaintiff, and others similarly situated have suffered financial loss as a result of this conduct, all in violation of 15 USC § 2.

65.    Under the Sherman Act, plaintiff, and others similarly situated, are entitled to injunctive relief, punitive damages, multiple damages and attorney fees and costs.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

WHEREFORE, plaintiff prays for judgment:

1.      Declaring this a proper class action, certifying plaintiff as a representative and undersigned as counsel for the class;

2.      Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices;

3.      Awarding monetary damages and interest, including treble and punitive damages, pursuant to common law, state and federal statutes;

4.      Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

5.      Such other, further relief as this Court may deem proper at law and equity.

Dated:June 14, 2021

Respectfully submitted,


By:     __s/WWestcott_____
William B. Westcott, Esq.
Maya Murphy, PC
266 Post Road East
Westport, CT 06880

(203) 221-3100 tel.
(203) 221-3199 fax
Federal Bar No. CT 18239
Bwestcott@mayalaw.com