UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

AUDREY DEMETRES,
*Plaintiff*,

v.

No. 3:21-cv-802 (JAM)

ZILLOW, INC.,
*Defendant*.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Audrey Demetres has filed a putative class action against Zillow, Inc. ("Zillow") claiming that its website employs unfair and deceptive tactics. She seeks compensatory and punitive damages. Zillow has moved for summary judgment. For the reasons stated below, I will grant Zillow's motion for summary judgment.

B‌ACKGROUND

Zillow operates a website of real estate listings "designed to assist current and prospective homeowners in the process of buying and selling homes."[1] Each real estate listing on Zillow's website contains an "Overview" section that includes the property's listing agent.[2]

Each listing on Zillow's website includes a "Contact agent" button.[3] When a consumer clicks the "Contact agent" button, a pop-up window appears that requests the consumer's information.[4] The pop-up window includes a disclosure, which reads in relevant part: "By

---

[1] Doc. #77 at 1 (¶¶ 1–2).
[2] *Id.* at 2 (¶ 8). Demetres denies this fact, contending that this information "is obscured in its presentation and configured in such a way as to mislead prospective home buyers to first select the . . . 'Contact agent' button." *Ibid.* But "a responsive statement of material facts that contains argument, legal conclusions, personal belief, and speculation is inappropriate." *Wallace v. Sharp*, 2022 WL 428102, at *3 (D. Conn. 2022). Where a "plaintiff's Local Rule 56(a)(2) Statement contains inappropriate responses," a court "will deem admitted certain facts within [defendant's] Local Rule 56(a)(1) Statement that are supported by the evidence in accordance with Local Rule 56(a)(1) for the purposes of resolving this motion." *Ibid.* Accordingly, I will deem this fact admitted because it is supported by evidence in the record. *See* Doc. #67-1 at 2 (property listing on Zillow's website that includes a listing agent under the "Overview" heading).
[3] Doc. #77 at 3 (¶ 11).
[4] *Id.* at 3 (¶ 12).

1

pressing Contact agent, you agree that Zillow Group and its affiliates, and real estate professionals may call/text you about your inquiry, which may involve use of automated means and prerecorded/artificial voices. . . . Zillow does not endorse any real estate professionals."[5]

A real estate listing on Zillow's website may also include a "Zestimate."[6] A Zestimate is Zillow's estimate of a property's value.[7] When a consumer clicks on a property's Zestimate, a disclosure appears that includes the following: "The Zestimate is Zillow's best estimate of this home's market value. It is not an appraisal and it should be used as a starting point. Learn more."[8] The phrase "Learn more" is a hyperlink that, when clicked, directs to a separate page on Zillow's website featuring additional information on the Zestimate, including the method of calculation, accuracy, and frequently asked questions.[9]

In June 2021, Demetres, a licensed real estate agent in Connecticut, initiated this putative class action for compensatory and punitive damages.[10] She alleged claims under the Lanham Act, 15 U.S.C. § 1125(a), the Sherman Act, 15 U.S.C. §§ 1 and 2, Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a, and common law tortious interference with contractual relationships.[11]

---

[5] *Id.* at 3–4 (¶ 13). The disclosure reads in full: "By pressing Contact agent, you agree that Zillow Group and its affiliates, and real estate professionals may call/text you about your inquiry, which may involve use of automated means and prerecorded/artificial voices. You don't need to consent as a condition of buying any property, goods or services. Message/data rates may apply. You also agree to our Terms of Use. Zillow does not endorse any real estate professionals. We may share information about your recent and future site activity with your agent to help them understand what you're looking for in a home." *Ibid.* Demetres denies this fact, claiming consumers are "misled to select the . . . "Contact agent" button without realizing th[is] button[] will lead them exclusively to agents who have paid a fee to Zillow." *Id.* at 4 (¶ 13). But such an argument, for the reasons outlined above, is insufficient to sustain a denial. *See Martin v Town of Simsbury*, 505 F. Supp. 3d 116, 125 (D. Conn. 2020) (collecting cases). Accordingly, I will deem this fact admitted because it is supported by evidence in the record. *See* Doc. #67-3 at 2 ("Contact agent" pop-up window displaying the disclosure).
[6] Doc. #77 at 4–5 (¶ 17).
[7] *Id.* at 5 (¶ 18).
[8] *Id.* at 5 (¶ 21).
[9] *Id.* at 5 (¶ 22).
[10] Doc. #1; Doc. #77 at 6 (¶ 29).
[11] Doc. #5 at 18–21.

2

Demetres claims that property sellers and buyers "have broken their agreements with [her]" because of Zestimates.[12] She also alleges that the "Contact agent" button and Zestimates were deceptive and misleading.[13]

In September 2021, Zillow moved to dismiss.[14] In a September 2022 ruling, Judge Arterton dismissed Demetres' Lanham Act and Sherman Act claims.[15] *See Demetres v. Zillow, Inc.*, 2022 WL 4367597, at *8, *10–11 (D. Conn. 2022). After over a year of discovery, the parties agree that Demetres' claims "are limited to the 'Contact agent' button and Zestimates contained on Zillow's website."[16]

As to Demetres' claims involving the "Contact agent" button, it is impossible to know whether consumers clicking the button would be interested in purchasing the corresponding property.[17] Similarly, it is "impossible to quantify the potential number of 'lost leads' and determine whether these 'lost leads' could have resulted in a potential client and an actual closed transaction for" Demetres.[18] Demetres concedes that she would require an "economic damages expert" to calculate what, if any, damages she sustained from "lost leads."[19] She has not retained the expert she claims she needs.

As to Demetres' claims involving Zestimates, she has not identified any buyers who broke their agreements with her because of a Zestimate.[20] Rather, she seeks damages only from three listing agreements she had with sellers.[21]

---

[12] *Id.* at 10 (¶ 37).
[13] *Id.* at 8–9 (¶¶ 34–35).
[14] Doc. #7.
[15] Doc. #21
[16] Doc. #77 at 7 (¶ 34).
[17] *Id.* at 7 (¶ 35).
[18] *Id.* at 8 (¶ 37).
[19] *Id.* at 8 (¶ 38).
[20] *Id.* at 8 (¶ 40). Moreover, Demetres admitted that she did not make agreements with buyers before an offer was made on a property. *Id.* at 8 (¶ 39).
[21] *Id.* at 8 (¶ 40).

First, she seeks damages for a December 2019 listing agreement regarding a property located at 6 Terra Nova Circle in Westport, Connecticut (the "Terra Nova" property).[22] On December 13, 2019, the Zestimate for the Terra Nova property was $957,199.[23] That same day, Demetres entered into a listing agreement with the Terra Nova property owner, specifying a higher listing price of $1,149,000.[24] Demetres described this transaction as "very, very difficult" from the outset due to the property owner's "idea that her home was worth an extreme amount of money."[25] Although Demetres agreed to the $1,149,000 listing price, she claims that $950,000 would "have been a way better price."[26] This disjunct in pricing was emblematic of Demetres' relationship with the Terra Nova property owner, with whom Demetres had "constant" disagreements and "didn't care for."[27] The listing agreement for the Terra Nova property was ultimately terminated by the parties.[28]

Second, she seeks damages for a March 2021 listing agreement regarding a property located at 4 Ferry Lane East in Westport, Connecticut (the "Ferry Lane" property).[29] On March 16, 2021, the Zestimate for the Ferry Lane property was $1,381,272.[30] The next day, Demetres entered into a listing agreement with the Ferry Lane property owners, specifying a higher listing price of $1,950,000.[31] The listing for the Ferry Lane property expired on its own terms.[32]

---

[22] *Id.* at 9 (¶ 42).
[23] *Id.* at 9 (¶ 43).
[24] *Id.* at 9 (¶¶ 42, 45); *see* Doc. #66-4 at 2.
[25] Doc. #77 at 9 (¶ 46).
[26] *Id.* at 10 (¶ 48).
[27] *Id.* at 10 (¶ 52).
[28] *Id.* at 10 (¶ 53).
[29] *Id.* at 11 (¶ 54).
[30] *Id.* at 11 (¶ 55).
[31] *Id.* at 11 (¶¶ 54, 57); *see* Doc. #66-6 at 2.
[32] Doc. #77 at 12–13 (¶ 65). Demetres' denial of this fact is unsupported by the evidence on which she relies. The Ferry Lane property owner clearly stated in her deposition that the listing expired on its own terms. *See* Doc. #66-8 at 11 ("Q Did [the Ferry Lane] listing expire on its own terms? A Yes."). Indeed, Demetres herself testified that the listing expired on its own terms. *See* Doc. #78-1 at 49–50 (identifying the Woods as sellers of the Ferry Lane property), 65–66 ("Q What happened with the Woods' listing? Did it expire on its own terms? A It did. Q Okay. So it terminated because it ran its course, correct? A Yes."). Accordingly, I will deem this fact admitted. *See Conn.*

Third and finally, Demetres seeks damages for a September 2022 listing agreement regarding a property located at 26 Avenue B in Norwalk, Connecticut (the "Avenue B" property).[33] On September 8, 2022, the Zestimate for the Avenue B property was $501,900.[34] The next day, Demetres entered into a listing agreement with the Avenue B property owner, specifying a lower listing price of $428,000.[35] After receiving multiple offers, the Avenue B property seller accepted an offer for almost $10,000 above the listing price.[36] Nevertheless, this transaction fell through because the purchaser could not secure financing.[37] The Avenue B seller then decided she no longer wanted to sell the property, and the listing expired on its own terms.[38]

On October 30, 2023, Zillow moved for summary judgment on the surviving claims.[39] In her responding brief, Demetres did not address Zillow's arguments with respect to her tortious interference claim, and her counsel clarified at oral argument that this claim had been abandoned. Accordingly, this ruling addresses only Demetres' remaining CUTPA claims.

## DISCUSSION

The principles governing review of a motion for summary judgment are well established. Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). I must view the facts in the light most favorable to the party who opposes the motion for summary judgment and then decide if those facts would be enough—if eventually proved at trial—to allow a reasonable jury to decide the case in favor of the opposing party. My role at

---

*Gen. Life Ins. Co. v. BioHealth Lab'ys, Inc.*, 2024 WL 2106837, at *1 n.1 (D. Conn. 2024).
[33] Doc. #77 at 13 (¶ 66).
[34] *Id.* at 13 (¶ 67).
[35] *Id.* at 13 (¶¶ 66, 68); *see* Doc. #66-9 at 2.
[36] Doc. #77 at 14 (¶¶ 72–73).
[37] *Id.* at 14 (¶¶ 74–76).
[38] *Id.* at 14–15 (¶¶ 77–78).
[39] Doc. #63.

summary judgment is not to judge the credibility of witnesses or to resolve close, contested issues of fact but solely to decide if there are enough facts that remain in dispute to warrant a trial. *See generally Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (*per curiam*); *Union Mut. Fire Ins. Co. v. Ace Caribbean Mkt.*, 64 F.4th 441, 445 (2d Cir. 2023).[40]

### *Standing*

Zillow argues that Demetres lacks standing to maintain this suit because she has produced no evidence to show that these alleged injuries occurred.[41] To establish Article III standing, "a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024). "To satisfy the first requirement, a plaintiff must plead an injury that is 'concrete and particularized and actual or imminent, not conjectural or hypothetical.'" *Brokamp v. James*, 66 F.4th 374, 386 (2d Cir. 2023) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Although "general factual allegations of injury resulting from the defendant's conduct may suffice" at the pleading stage, "[i]n response to a summary judgment motion, . . . the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts' . . . which for purposes of the summary judgment motion will be taken to be true." *Lujan*, 504 U.S. at 561 (quoting Fed. R. Civ. P. 56(a)).

---

[40] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.
[41] Doc. #64 at 21–26.

Demetres has asserted a CUTPA claim based on the "Contact agent" button on Zillow's website.[42] She alleges that this button is deceptive and has resulted in lost commissions.[43] But the parties agree that "[i]t is impossible to know whether someone clicking the 'Contact agent' button would actually be interested in potentially purchasing the property."[44] Indeed, Demetres "admitted that it is impossible to quantify the potential number of 'lost leads'" and if those "'lost leads' could have resulted in a potential client and an actual closed transaction for" her.[45] Demetres has put forth no evidence, other than her conclusory statement that she "absolutely ha[s] been harmed," to substantiate this alleged injury.[46] But conclusory claims of harm are insufficient to confer standing at the summary judgment stage.

Demetres' reliance on an "'economic damages expert' to quantify any damage from her alleged 'lost leads'" is similarly unpersuasive, since no expert has materialized.[47] *See Lewis v. FMC Corp.*, 786 F. Supp. 2d 690, 715 (W.D.N.Y. 2011) (granting summary judgment for lack of standing in part because plaintiffs "provided no expert opinion or factual evidence that would establish, or even suggest, an injury-in-fact").

To the extent that Demetres' relies on her own "specialized, professional expertise" and "superior knowledge of the industry" that is "beyond the ken of the average juror" and in an apparent effort to qualify herself as an economic damages expert,[48] such an attempt is unsuccessful because she has not complied with the Court's scheduling order for expert witnesses.[49] Aside from this procedural shortcoming, Demetres cannot serve as her own expert

---

[42] Doc. #5 at 8–9 (¶ 34).
[43] Doc. #76 at 2–3.
[44] Doc. #77 at 7 (¶ 35).
[45] *Id.* at 8 (¶ 37).
[46] Doc. #80 at 5 (¶ 6).
[47] Doc. #77 at 8 (¶ 38).
[48] Doc. #76 at 2.
[49] Doc. #26 (scheduling order outlining the disclosure of expert reports and expert depositions); *see* Doc. #79 at 7 (noting that plaintiff did not identify herself as an expert or produce an expert report in compliance with the Court's

witness because she is "too intertwined with the facts of this case." *Ordon v. Karpie*, 543 F. Supp. 2d 124, 127 (D. Conn. 2006) (finding plaintiff's "deposition testimony that purport[ed] to qualify him as an expert . . . [wa]s insufficient to defeat the motion for summary judgment because he cannot serve as an expert witness in support of his own claim under [Federal Rule of Evidence] 403"). Because Demetres has not demonstrated an injury-in-fact with respect to her "Contact agent" button-based CUTPA claim, she lacks standing to pursue this claim.

Demetres also advances a CUTPA claim based on Zillow's Zestimate.[50] In ruling on the motion to dismiss, Judge Arterton addressed the shortcomings of Demetres' Zestimate-based CUTPA claim. *See Demetres*, 2022 WL 4367597, at *12 (noting that Demetres "fail[ed] to distinguish the Zestimates tool from Defendant's opinions on the market value of residential real estate, which cannot be the basis for a claim for a CUTPA violation"). But she seemingly denied the motion to dismiss with respect to the Zestimate-based CUTPA claim. *See id.* at *13 ("accept[ing] Plaintiff's allegations that she incurred losses 'as a result of' Defendant's Zestimate program as true" and concluding that "Defendant's motion to dismiss the CUTPA claim is denied"). The parties now disagree as to whether Demetres' Zestimate-based CUTPA claim survived the motion to dismiss.[51]

Assuming without deciding that the Zestimate-based CUTPA claim survived the motion to dismiss, the fact remains that Demetres does not have standing to bring this claim. Demetres seeks "damages as a result of [the] three seller agreements" outlined above.[52] But the record

---

scheduling order); Doc. #81-1 at 2 (email from plaintiff's counsel to defense counsel noting that he had "decided not to seek additional time in discovery for the purpose of producing and disclosing an expert report").
[50] Doc. #5 at 11–15 (¶ 38).
[51] *Compare* Doc. #64 at 13 (defendant summarizing the previous ruling as "dismiss[ing] Plaintiff's Sherman and Lanham Act claims, along with the portion of her CUTPA claim that was based on the Zestimate"), *with* Doc. #76 at 7 (plaintiff contending that "Defendant's minimization of the harm caused by the Contact Agent button and the Zestimates is incongruent with the broad, remedial reach that is embodied in the law providing for CUTPA claims").
[52] Doc. #77 at 8 (¶ 40).

belies Demetres' contention that the Avenue B and Ferry Lane property sellers terminated their listing agreements because of Zestimates. The parties agree that the listing for the Avenue B property expired on its own terms.[53] And while Demetres disputes that the listing for the Ferry Lane property expired on its own terms,[54] testimony from both the Ferry Lane property owner[55] and Demetres[56] make clear that that was the case. Accordingly, Demetres cannot demonstrate an injury-in-fact sufficient to confer standing with respect to the Avenue B and Ferry Lane listing agreements.

Although the Terra Nova listing agreement was terminated, Demetres has not shown a genuine fact issue that the termination was caused by Zestimate. "Causation is not met when a plaintiff's injury arises from 'the independent action of some third party.'" *Conn. Parents Union v. Wentzell*, 462 F. Supp. 3d 167, 173 (D. Conn. 2020) (quoting *Bennett v. Spear*, 520 U.S. 154, 169 (1997)). Despite the "relatively modest" burden of demonstrating causation, *Bennett*, 520 U.S. at 171, that requirement is made more difficult where traceability "depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or predict," *Lujan*, 504 U.S. at 562. In cases such as this one, "it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation." *Lujan*, 504 U.S. at 562.

Demetres has not shouldered that burden with respect to the Terra Nova listing agreement. The parties agree that the property's "listing agreement was eventually cancelled

---

[53] *Id.* at 15 (¶ 78).
[54] *Id.* at 12–13 (¶ 65).
[55] Doc. #66-8 at 11 ("Q Did this listing expire on its own terms? A Yes.").
[56] Doc. #78-1 at 49–50 (identifying the Woods as sellers of the Ferry Lane property), 65–66 ("Q What happened with the Woods' listing? Did it expire on its own terms? A It did. Q Okay. So it terminated because it ran its course, correct? A Yes.").

because the [Terra Nova property] could not sell, the seller wanted a different agent," and, in Demetres' own words, "it was not working out . . . it was never working out."[57]

Nevertheless, Demetres claims that the Terra Nova property was "overpriced" because "[o]f Zillow's Zestimate's influence on the seller."[58] But the undisputed evidence contradicts this claim. The day Demetres entered into the listing agreement with the Terra Nova property owner, the property's Zestimate was $957,199.[59] Demetres then listed the Terra Nova property for $1,149,000 at the seller's request.[60] Demetres has not advanced any rationale for why a Zestimate almost $200,000 *below* the listing price would cause the listing agreement to terminate. Indeed, Demetres concedes that while the Terra Nova seller thought the property was "seriously underpriced," the "Zestimate could not have factored into her seriously underpricing the unit because Zillow's Zestimate was" far below the listing price.[61]

At this stage, Demetres' mere "belief[f] [that] the Zestimate caused the [Terra Nova] seller to cancel the listing agreement" is insufficient to defeat summary judgment.[62] A plaintiff "cannot rely on self-serving averments not substantiated by the evidentiary record to establish a genuine issue of material fact." *Justin v. Barone*, 2023 WL 6379342, at *7 (D. Conn. 2023); *see Deebs v. Alstom Transp., Inc.*, 346 F. App'x 654, 656 (2d Cir. 2009) (same). Here, Demetres' claim that the Terra Nova listing agreement was terminated because of a Zestimate below the listing price is unsupported by the record and basic logic. Accordingly, because Demetres cannot

---

[57] Doc. #77 at 10 (¶ 51).
[58] Doc. #78-1 at 21.
[59] Doc. #77 at 9 (¶ 43).
[60] *Id.* at 10 (¶ 48); *see* Doc. #78-1 at 31 (noting that Demetres' pricing of the Terra Nova property was done "[a]t the seller's behest").
[61] Doc. #78-1 at 33.
[62] Doc. #80 at 7 (¶ 10). Demetres' contention that she wanted to list the Terra Nova property at a price lower than the Zestimate is immaterial because none of her testimony indicates that the dissolution of the listing agreement was because of a disagreement over her proposed price. *See id.* at 7 (¶ 9).

demonstrate that the Terra Nova listing agreement was terminated because of the Zestimate, she lacks standing to pursue any related claim.

In sum, the record does not show that there is a genuine fact issue to suggest that Zemetres was injured in fact by the "Contact agent" button or Zestimate. Accordingly, I will grant summary for lack of constitutional standing.

### *CUTPA*

Even assuming that Demetres has standing, she cannot satisfy the elements of a CUTPA claim. Connecticut law prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). A CUTPA claim consists of four elements: "that the defendant has (1) engaged in unfair methods of competition or unfair or deceptive acts or practices (2) in the conduct of any trade or commerce, (3) resulting in (4) an ascertainable loss of money or property, real or personal, by the plaintiff." *Kent Literary Club of Wesleyan Univ. at Middletown v. Wesleyan Univ.*, 338 Conn. 189, 212 (2021).

Demetres has not shown that Zillow engaged in an unfair business act or practice. To determine whether an act or practice is unfair under CUTPA, courts apply the following three factors borrowed from the Federal Trade Commission's "cigarette rule": first, "whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness"; second, "whether it is immoral, unethical, oppressive, or unscrupulous"; or third, "whether it causes substantial injury to consumers." *Id.* at 232.

Demetres has not fulfilled any of these factors. First, she does not point to any statute, common law rule, or other pre-existing legal duty that Zillow violated with its "Contact agent" button or Zestimate. Second, she does not suggest or show that the "Contact agent" button or Zestimate are immoral, unethical, oppressive, or unscrupulous. Finally, despite Demetres' claim that she "is able to detail the manner in which she is harmed in accordance with the intended breadth of CUTPA," she has not done so.[63] And a "conclusory statement that [Demetres] suffered a substantial injury, without more, does not satisfy the requirement of the third prong of the cigarette rule under CUTPA." *Waterbury Generation LLC v. Waterbury Land Partners, LLC*, 2021 WL 4224413, at *4 (D. Conn. 2021). Accordingly, I cannot find that the "Contact agent' button and Zestimate qualify as unfair business acts or practices under CUTPA.

Nor does Demetres allege any non-conclusory facts to show that Zillow engaged in a deceptive business act or practice. "An act or practice is deceptive if three requirements are met. First, there must be a representation, omission, or other practice likely to mislead consumers. Second, the consumers must interpret the message reasonably under the circumstances. Third, the misleading representation, omission, or practice must be material—that is, likely to affect consumer decisions or conduct." *Cenatiempo v. Bank of Am., N.A.*, 333 Conn. 769, 800 (2019).

Demetres' CUTPA claim based on the "Contact agent" button relies on a theory of deception by omission: that the button was "very intentional[ly]" "deceptive" because consumers "think they are being linked with . . . the listing agent" but are instead connected to "a subagent of the seller."[64] Although CUTPA allows for a deception claim to be based on an omission, "a failure to disclose can be deceptive only if, in light of all the circumstances, there is a duty to disclose." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 276 (2d Cir. 2013). But Demetres has

---

[63] Doc. #76 at 8.
[64] Doc. #80 at 3 (¶ 2); *see also id.* at 4–5 (¶¶ 3, 5).

not alleged that Zillow had a duty to disclose that the agent with whom consumers were connected through the "Contact agent" button was not the listing agent. Accordingly, I cannot find that Zillow's "Contact agent" button was a deceptive business act or practice.

Demetres also alleges that the Zestimate misleads consumers because the estimate is "based on data aggregation" rather than "the listing agent's appraisal."[65] But Demetres has proffered no evidence to support her claim that consumers were misled by the Zestimate. Indeed, commonsense and the record compel the opposite conclusion. First, the word "Zestimate" is a hybrid of the company's name and estimate; it is, as the name suggests, Zillow's estimate.

And when a consumer clicks a property's Zestimate, the following disclosure appears: "The Zestimate is Zillow's best estimate of this home's market value. *It is not an appraisal* and it should be used as a starting point. Learn more."[66] When a consumer clicks on the phrase "Learn more," he or she is directed to another page that "provides additional information regarding the Zestimate, including, but not limited to, an explanation of how Zestimates are calculated, the accuracy levels of Zestimates, and more than 20 Frequently Asked Questions."[67] Accordingly, consumers could not reasonably be misled into believing that the Zestimate was anything other than Zillow's estimate. I therefore cannot find that the Zestimate was a deceptive business act or practice.

Nor can Demetres satisfy the ascertainable loss requirement of a CUTPA claim. By its own terms, this "requirement is a threshold barrier which limits the class of persons who may bring a CUTPA action." *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 190 (2d Cir. 2020). An ascertainable loss is one "that is capable of being discovered, observed or established" and

---

[65] *Id.* at 4 (¶ 4).
[66] Doc. #77 at 5 (¶ 21) (emphasis added).
[67] *Id.* at 5 (¶ 22).

13

"necessarily encompasses a broader meaning than the term damage, and has been held synonymous with deprivation, detriment and injury." *Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, 287 Conn. 208, 218 (2008).

As to Zillow's "Contact agent" button, Demetres admits that "it is *impossible* to quantify" the number of "lost leads," or whether those leads would have resulted in financial benefit to her.[68] But an ascertainable loss "must still be measurable," even if "the precise amount of the loss is not known." *Conn. Fair Hous. Ctr. v. Corelogic Rental Prop. Sols., LLC*, 369 F. Supp. 3d 362, 380–81 (D. Conn. 2019). Because Demetres has provided no means of measuring the loss she allegedly sustained from the "Contact agent" button, she cannot prove an ascertainable loss under CUTPA.

Similarly, Demetres cannot demonstrate an ascertainable loss as to the listing agreements. Because the Ferry Lane and the Avenue B listing agreements expired on their own terms, Demetres sustained no loss from these agreements. Although the Terra Nova listing agreement was terminated, Demetres has not proffered any evidence to demonstrate a resultant loss. *See Goins v. JBC & Assocs., P.C.*, 352 F. Supp. 2d 262, 275 (D. Conn. 2005) (noting that the ascertainable loss requirement is not met if a plaintiff fails "to present any evidence concerning the nature and extent of the injury sustained").

To the extent that the mere cancellation of the Terra Nova listing agreement constitutes an ascertainable loss, Demetres has not demonstrated that such a loss was caused by the Zestimate. "[A] CUTPA claim will lie only when the purportedly unfair trade practice is alleged to have directly and proximately caused the plaintiff's injuries." *Soto v. Bushmaster Firearms Int'l, LLC*, 331 Conn. 53, 94 (2019). But Demetres has submitted no evidence to show that

---

[68] *Id.* at 8 (¶ 37) (emphasis added).

whatever loss she sustained from the termination of the Terra Nova listing agreement was directly and proximately caused by the Zestimate. *See Tarpon Bay Partners LLC v. Zerez Holdings Corp.*, 547 F. Supp. 3d 195, 226–27 (D. Conn. 2021) (granting summary judgment of CUTPA claim in part because counterclaim plaintiff "submitted no evidence that might lead to a permissible inference that" the acts of counterclaim defendant "might have proximately caused" the alleged loss).

In sum, even assuming Demetres has standing, there is no genuine issue of fact to show that she can satisfy the elements of a CUTPA claim based on the "Contact agent" button or Zestimate. Accordingly, in the alternative to Demetres' lack of standing, I will grant Zillow's motion for summary judgment on its merits with respect to the CUTPA claims.

## CONCLUSION

For the reasons set forth above, the Court GRANTS the defendant's motion for summary judgment (Doc. #63). The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 30th day of July 2024.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge